# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

**DEBRA LEE BEHA,**

    **Plaintiff,**

vs.                                        **CIVIL ACTION NO. 2:17-CV-04032**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered September 26, 2017 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Memorandum in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (Document Nos. 13 and 16.)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (Document No. 13.), **GRANT** Defendant's request to affirm the decision of the Commissioner (Document No. 16.); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court.

**Procedural History**

The Plaintiff, Debra Lee Beha, (hereinafter referred to as "Claimant"), protectively filed her application for Title II benefits on February 18, 2014, alleging disability since May 23, 2013, because of "back injury and arthritis". (Tr. at 143-145, 146-147, 163.) Her claim was initially denied on June 5, 2014 (Tr. at 77-81.) and again upon reconsideration on September 16, 2014. (Tr. at 84-86.) Thereafter, Claimant filed a written request for hearing on November 21, 2014. (Tr. at 87-88.)

An administrative hearing was held on October 18, 2016 before the Honorable M. Drew Crislip, Administrative Law Judge ("ALJ"). (Tr. at 34-52.) On November 4, 2016, the ALJ entered an unfavorable decision. (Tr. at 7-26.) On November 15, 2016, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 138-142.) The ALJ's decision became the final decision of the Commissioner on July 28, 2017 when the Appeals Council denied Claimant's Request. (Tr. at 1-6.)

On September 25, 2017, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 10 and 11.) Subsequently, Claimant filed a Memorandum in Support of Judgment on the Pleadings (Document No. 13.), and in response, the Commissioner filed a Brief in Support of Defendant's Decision. (Document No. 16.) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 59 years old as of the alleged onset date, a "person of advanced age", and by the date of the ALJ's decision, she was 62 years old, therefore considered an individual "closely

approaching retirement age." See 20 C.F.R. § 404.1563(e). (Tr. at 19.) Claimant has a high school education and an employment history that includes work as an assistant retail manager, a retail sales associate, and a dental assistant. (Tr. at 164.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental

capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through June 30, 2018. (Tr. at 12, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the amended alleged onset date of May 23, 2013. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant had the following severe impairment: degenerative disc disease. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform the full range of sedentary work:

> with lifting, carrying, and pushing/pulling of 10 pounds occasionally and less than 10 pounds frequently; sitting for six hours in an eight-hour workday; standing two hours in an eight-hour workday; walking of two hours in an eight-hour workday; occasional use of foot controls bilaterally; frequent reaching overhead bilaterally; no climbing ladders, ropes, or scaffolds; no kneeling, crouching, and crawling; occasional climbing of ramps and stairs, balancing, and stooping; no working around unprotected heights, moving mechanical parts, extreme cold, and vibration; and only occasional exposure to work involving operating a motor vehicle.

(Id., Finding No. 5.)

At step four, the ALJ found Claimant was unable to perform any past relevant work. (Tr. at 18, Finding No. 6.) At the final step, the ALJ found that based on Claimant's age, education,

work experience, and RFC, she acquired skills from her past relevant work that are transferable to other jobs existing in significant numbers in the national economy that she can perform. (Tr. at 19-20, Finding Nos. 7-10.) Finally, the ALJ determined Claimant had not been under a disability from May 23, 2013 through the date of the decision. (Tr. at 21, Finding No. 11.)

**Claimant's Challenges to the Commissioner's Decision**

Claimant argues that the ALJ did not perform the requisite "transferable skills" analysis prior to finding that she had acquired skills that would enable her to perform other work at step five. (Document No. 13 at 6.) Claimant points out that the Regulations not only require the ALJ to give special consideration due to her age (Id.), but also the require him to show that the skills acquired from her past relevant work as a dental assistant are actually transferable to other work, specifically, a dental receptionist. (Id. at 6-7.) Claimant contends that the Commissioner did not carry her burden of production in finding that Claimant's skills as a dental assistant were transferable to a dental receptionist job: the only skills the ALJ found transferable were her familiarity of dental terms, working with others in a dental office, and the ALJ's unsupported lay opinion that Claimant's past experience in working with others who may be apprehensive or concerned over their dental care gave her an advantage over unskilled workers. (Id. at 8.)

Claimant states that the ALJ did not follow the special rules by explaining how she, as an individual closely approaching retirement age has transferable skills and asks the final decision be reversed, that benefits be awarded to her, or in the alternative, that the case be remanded to correct the errors below. (Id. at 9.)

In response, the Commissioner argues the ALJ complied with the Regulations by appropriately relying upon the testimony of the vocational expert, who explicitly testified that

Claimant's skills as a dental assistant, which she identified as Claimant's familiarity with dental terms and interacting with people in a dental office, were transferable to the occupation of dental receptionist, with very little or any adjustment to that occupation. (Document No. 16 at 7-9.) The vocational expert's testimony fulfilled the ALJ's duties under the Agency's rules and regulations. (Id. at 9.) Further, the vocational expert explained that anyone with a high school education can learn people skills in 30 days. (Id.) Claimant's background as a dental assistant, having previously worked in a dental office with patients who may be apprehensive of dental procedures, and her knowledge of dental terms, gives her a special advantage over unskilled workers in the labor market. (Id. at 9-10.)

The ALJ referenced the Dictionary of Occupational Titles ("DOT") description of dental assistant, which involves many of the same tasks as a dental receptionist. (Id. at 10.) The ALJ found that based on the vocational expert's testimony, Claimant's previous work as a dental assistant was so similar to the dental receptionist's job that she would need to make very little, if any, adjustment. (Id.) The vocational expert's testimony provides the substantial evidence the ALJ is required to show Claimant's past relevant work skills transferred to other work. (Id.)

The Commissioner states that her final decision is supported by the substantial evidence and asks this Court to affirm. (Id. at 11.)

**The Relevant Evidence of Record**[1]

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As pointed out by the parties in their respective pleadings, the arguments do not concern the medical evidence of record, but are narrowly focused on whether the ALJ properly relied upon the vocational expert's testimony with respect to whether Claimant's past relevant work skills were transferable to other work: namely, whether she acquired skills in her past work as a dental assistant that were transferable to work as a dental receptionist.

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

**The Administrative Hearing**

Claimant Testimony:

Claimant testified she had injured her back on the job and continued to experience a dull, aching pain that radiated to her right hip and knee. (Tr. at 38.) She indicated she was prescribed muscle relaxers, but her symptoms were exacerbated by prolonged standing, walking, sitting, and leaning over. (Tr. at 38-39.) She stated she used ice and home exercises given to her by a physical therapist for some relief. (Tr. at 39.) Claimant testified she had fractured her left foot and had residual pain and weakness with walking. (Tr. at 39-40.) She stated she also experienced fatigue from her thyroid disorder and partial thyroidectomy and napped every day. (Tr. at 40.) Claimant stated she could stand for 30 minutes before needing to sit and could sit approximately 15 minutes before needing to stand. (Tr. at 41.) She stated she could lift and carry seven to eight pounds and would experience pain if she tried to lift anything heavier. (Id.) Claimant described symptoms of depression and stated she had difficulty sitting and concentrating for long periods and became overwhelmed. (Tr. at 41-42.) She admitted to receiving help with daily chores and shopping. (Tr. at 42-43.)

At the conclusion of the hearing, Claimant explained that being a dental assistant "was totally different than being a receptionist." (Tr. at 50.) She stated receptionists now required insurance qualifications for which she was never trained. (Tr. at 50-51.)

Patricia B. Posey, Vocational Expert ("VE") Testimony:

The VE confirmed she had no updates to the vocational evidence she submitted as Exhibit

15E (Tr. at 235.), which included the titles and descriptions of Claimant's past work. (Tr. at 43-44.) The VE testified that an individual limited to light work with additional postural and environmental limitations could perform all of Claimant's past work. (Tr. at 45-46.) The VE further stated the individual could perform other work in the national economy. (Tr. at 46.) However, if an individual could never climb ladders, ropes, or scaffolds, or kneel, crouch, or crawl, the VE stated the individual would be unable to perform any of Claimant's past work but could perform work as a dental receptionist, a price marker, a blood donor assistant, or a bakery worker/inspector of bakery product. (Id.) In response to the ALJ's controlling hypothetical, the VE testified the dental receptionist position would remain. (Id.)

The VE identified the skills that would be transferable from the dental assistant to dental receptionist: "[o]ften dental assistants do composite work as well as a receptionist, so the familiarity of dental terms, the work activities of interacting with people." (Tr. at 47.) The VE testified that the individual could transfer from work as a dental assistant to work as a dental receptionist with no substantial vocational adjustment. (Id.) The VE opined that for an individual with a high school education "just coming in off the street", would not require more than thirty days to learn the skill of interacting with people, that the VE described as "greeting people and taking down names and so forth". (Tr. at 48-49.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be

> somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

This case rests entirely on whether the ALJ erred in finding that Claimant's acquired skills as a dental assistant were transferable, thus rendering her capable of performing work as a dental receptionist. The ALJ's step five analysis further depends upon whether he appropriately relied upon the vocational expert's testimony.

The ALJ found Claimant to be an "individual closely approaching retirement age" (Tr. at 19, Finding No. 7.), therefore, he was required to follow special rules, as "age significantly affects a person's ability to adjust to other work." See 20 C.F.R. § 404.1563(e). Section 404.1568(d)(4) provides:

> If you are *closely approaching retirement age* (age 60 or older) and you have a severe impairment(s) that limits you to no more than *light* work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. (italics in original)

Both Claimant and the Commissioner correctly note that the SSA has defined a "skill" as:

> Knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

Social Security Ruling (SSR) 82-41, 1982 WL 31389, at *2. The Regulations provide that "[w]e consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." See 20 C.F.R. § 404.1568(d)(1). "Transferability is most probable and meaningful among jobs" where the same or lesser degree of skills are required, where the same or similar tools are used, and where the same or similar materials, products, processes or services are required, however, for transferability, these factors need not have "complete similarity." Id. §§ 404.1568(d)(2)-(d)(3).

A skill cannot be acquired by performing an unskilled job, and a person who has acquired skills that are not transferable to other jobs "has no special advantage." Id. However, "the higher the skills level, the more the potential for transferring skills increases." SSR 82-41, 1982 WL 31389, at *2. "Skills, levels of skills and potential occupations to which skills from [past relevant work] may be transferred are for the adjudicator or ALJ to determine (with the assistance, when required, of a VS or occupational reference sources)." Id. at *4.

When an ALJ makes a finding that a claimant has transferable skills, he must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills

are transferable. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988). "When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision." 1982 WL 31389, at *7.

> A particular job may or may not be identifiable in authoritative reference materials. The claimant is in the best position to describe just what he or she did in [past relevant work], how it was done, what exertion was involved, what skilled or semiskilled work activities were involved, etc. Neither an occupational title by itself nor a skeleton description is sufficient to document the claimant's acquisition of skills.

Id. at *4. "Job titles, in themselves, are not determinative of skill level." Id.

Prior to giving her testimony, the vocational expert prepared a Past Work Summary that indicated Claimant acquired skills from her past relevant work as a dental assistant that would transfer to work as a dental receptionist; the Past Work Summary indicated that Claimant's work involved "frequent interaction with others, frequent use of upper extremities, and occasional feeling." (Tr. at 19, 235.) The ALJ observed that the DOT described Claimant's past relevant work as follows:

> the job as a dental assistant involves assisting the dentist during examination and treatment of patients, instructing the patients in oral hygiene, providing postoperative instructions prescribed by dentists, recording treatment information in patients' records, scheduling appointments, preparing bills, receiving payments, completing insurance forms, and maintaining clerical records, manually or by a computer.

(Tr. at 19.) In addition, the ALJ noted the vocational expert's testimony that Claimant's past relevant work required the skills of "work activities of interacting with people and being familiar with dental terms", and that these skills would readily transfer to the job of dental assistant without substantial adjustment. (Id.)

11

The ALJ acknowledged the Claimant's representative's arguments that the skill of interacting with others, or "people skills", could be learned by anyone with a high school education under thirty days, and is therefore not a skill. (Id.) The ALJ explicitly "reject[ed]" this argument, stating that Claimant's experience of working in a dental office, "especially patients who may be apprehensive or concerned about their dental care, and being familiar with dental terms would give her a special advantage over unskilled workers in the labor market." (Tr. at 19-20.) Thus, the ALJ "agree[d] with the testimony of the vocational expert and [found] that interacting with others in this context is considered a transferable skill." (Tr. at 20.)

With regard to other work that Claimant could perform given her RFC, the ALJ noted the vocational expert not only identified the job of dental receptionist, but also identified other jobs, including document preparer, food sorter, and folder. (Id.) Moreover, the ALJ concluded that based on the vocational expert's testimony, Claimant had acquired skills from her past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. (Tr. at 20-21.) Finally, the ALJ found that based on the vocational expert's testimony, Claimant's "previous work is so similar to the jobs recited above that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." (Tr. at 21.)

As required by the Agency's own Ruling, *supra*, the ALJ expressly made a finding as to what Claimant's transferable skills were and specified the occupations to which those skills transferred. As stated by the Commissioner, Section 404.1566(e) provides that the ALJ can satisfy his burden at step five by relying on vocational expert testimony. (Document No. 16 at 8.) Indeed, the ALJ explicitly found that the vocational expert's testimony supported these findings.

Claimant contends that the ALJ improperly inserted his lay opinion that supplemented Claimant's skills by including her ability to interact with people who may be apprehensive about their dental care, which renders his conclusions regarding the transferability of her acquired work skills unsupported by the substantial evidence. (Document No. 13 at 8.) The fact remains that the vocational expert testified that Claimant's acquired skills of interacting with people and knowledge of dental terms easily transferred from her past relevant work as a dental assistant to the job of dental receptionist, and that the ALJ expressly found the vocational expert's testimony was consistent with the DOT. (Tr. at 20.) There has been no demonstration of conflict with the vocational expert's testimony or her opinion in light of the ALJ's finding. Nevertheless, "[s]kills, levels of skills and potential occupations to which skills from [past relevant work] may be transferred are for the adjudicator or ALJ to determine." 1982 WL 31389, at *4. Further, there has been no demonstration that Claimant's acquired skills as a dental assistant could not transfer to the occupation of dental receptionist, as shown by the vocational expert's undisputed testimony. See, Knight v. Astrue, 2010 WL 5572827, at *5 (E.D. Va. Dec. 14, 2010). Therefore, Claimant's contention on this particular issue lacks merit.

Claimant testified at the close of the hearing that dental receptionists require insurance certification, a skillset or job duty she did not have as a dental assistant, indeed, she stated "[a]ll I did was work with the doctor . . . on . . . the other end of it." (Tr. at 51.) This testimony suggests that the additional work duties of a "dental assistant" as noted by the ALJ from the DOT, presumably, "recording treatment information in patients' records, scheduling appointments, preparing bills, receiving payments, completing insurance forms, and maintaining clerical records, manually or by a computer" were not part of Claimant's actual work duties, notwithstanding her

job title. See, e.g., SSR 82-41, 1982 WL 31389, at *4.

In contrast, the vocational expert testified that there were no skills required for the dental receptionist job that might not be gleaned from the dental assistant job. (Tr. at 47.) However, in her application forms, Claimant wrote that her work duties as a dental assistant included assisting the dentist, and "all duties in lab and paper work for [patients]." (Tr. at 176.) Claimant checked the boxes that for this job she had to "[u]se technical knowledge or skills" as well as writing, such as "complete reports." (Id.) Of interest here is that this case can be distinguished from Pyles v. Bowen because the Secretary therein conceded that not only that the claimant's past relevant work did not consist of the activities or job duties as described in the DOT, but also she was unable to perform the duties of the other job identified by the vocational expert. 849 F.2d at 849. No such concession has been made here, and further, the vocational expert testified that in just considering the DOT skills, and not the composite work, Claimant's skills acquired as a dental assistant would be similar enough to transfer to dental receptionist work. (Tr. at 48.)

Although Claimant contends that her past relevant work skill of interacting with people is not a transferrable skill, the vocational expert testified that it was, further, there is no dispute concerning the other transferrable skill identified, that is, Claimant's knowledge of dental terms. Accordingly, the ALJ properly relied upon the testimony of the vocational expert, and as demonstrated by conflict of what Claimant's skills were and how they transferred, such conflicts are for the ALJ to decide. Hays v. Sullivan, 907 F.2d at 1456. The evidence of record does not demonstrate that the ALJ deviated from the Regulations or pertinent law in determining what skills Claimant acquired during her past relevant work and whether they transferred over to other work that she would have "to make very little, if any, vocational adjustment in terms of tools, work

processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4)

In sum, the undersigned **FINDS** that the ALJ's step five analysis complied with the pertinent Regulations and Agency's Rulings, that his determination that Claimant's identified skills acquired during her past relevant work transferred to other work within the same industry with little, if any vocational adjustment, and is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for judgment on the pleadings (Document No. 13.), **GRANT** the Defendant's request to affirm the decision below (Document No. 16.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: March 12, 2018.

_____
Omar J. Aboulhosn
United States Magistrate Judge